IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DWIGHT LODGE<br><br>Plaintiff<br><br>v.<br><br>DISTRICT HOSPITAL PARTNERS, et al.<br><br>Defendants | Civil Case No. 1:09 cv 02110 (EGS) |

## OPPOSITION TO THE MOTION FOR QUALIFIED PROTECTIVE ORDER FILED BY DEFENDANT, DISTRICT HOSPITAL PARTNERS

Plaintiff, Dwight Lodge, by and through his attorneys, Stuart M. Salsbury, Gregory G. Hopper, and Salsbury, Clements, Bekman, Marder & Adkins, LLC, respectfully requests the Court to DENY the Motion for Qualified Protective Order filed by Defendant, District Hospital Partners LP, and, in support thereof, states as follows:

I. **INTRODUCTION**

Dwight Lodge suffered a significant traumatic brain injury on January 2, 2007 while hospitalized at George Washington Hospital. Mr. Lodge, who received anesthesia and fluids during a bronchoscopy procedure earlier that day, was left unattended in a room with an unsecured oxygen cylinder. Sedated, drowsy, and incoherent, he woke-up with an urgent need to use the bathroom. As he made his

way across the room, he began to feel weak, reached out for the cylinder, and fell to the ground with the cylinder landing on his head. The blow to Mr. Lodge's head fundamentally affects his memory, mental functioning, and, perhaps more significantly, his body's ability to regulate his breathing. He has spent the last three years in and out of hospitals suffering from the effects of his injuries.

In response to Mr. Lodge's Complaint, District Hospital Partners filed a Motion asking the Court to allow its attorneys to bypass the privacy safeguards codified in the Health Insurance and Portability Accountability Act of 1996 (HIPPA) and have informal, ex parte meetings and conversations with Mr. Lodge's treating physicians.

From the outset, Mr. Lodge states that he agrees to produce all of his medical records to District Hospital Partners and to work diligently to schedule the depositions of any treating physician with information relevant to this case. Mr. Lodge understands that District Hospital Partners needs medical records and information to defend against his claim. However, he is not willing to consent to District Hospital Partners or its attorneys having informal, ex parte meetings and conversations with his treating physicians.

Dwight Lodge opposes District Hospital Partner's Motion and asks the Court to limit its contact with his treating physicians to depositions and other formal discovery methods for two reasons:

1. District Hospital Partners has not demonstrated a need for ex parte access to Mr. Lodge's treating physicians sufficient to justify trampling on his privacy and physician-patient confidentiality rights and deviating from standard, formal discovery devices. The Defendant's boilerplate assertions about "fundamental fairness" are simply not enough to carry the day based upon federal precedent.

2. Allowing District Hospital Partners' attorneys to have informal, ex parte meetings and conversations with Mr. Lodge's treating physicians risks the inadvertent disclosure of protected, confidential information because of a lack of procedural safeguards; erosion of the relationships Mr. Lodge has with his treating physicians; and undue influence on the witnesses. Instead of granting the relief sought in the Motion, the Court should allow District Hospital Partners to have access to Mr. Lodge's treating physicians in depositions or through other formal discovery methods.

## II. LEGAL STANDARD

The Health Insurance Portability and Accountability Act of 1996 (HIPAA) was enacted to "ensure the integrity and confidentiality of [patients'] information" and protect against "unauthorized uses or disclosures of that information." 42 U.S.C. § 1320d-2(d)(2)(A) & (8)(ii). The Act embodies a "strong federal policy in favor of protecting the privacy of patient medical records" and restricts "the methods by which a physician may release a patient's health information." Law v. Zuckerman, 307 F.Supp.2d 705, 708, 711 (D. Md. 2004); see also United States v. Sutherland, 143 F. Supp.2d 609, 612 (W.D. Va. 2001).

The enactment of HIPAA "radically changed the landscape of how litigators can conduct informal discovery in cases involving medical treatment." Law, 307 F.Supp.2d at 708 (emphasis added). While many states allowed and even

encouraged informal discovery of plaintiffs' medical information prior to the enactment of HIPAA, the statute and its related federal regulations "expressly supercede[d] any contrary provisions of state law" unless the provisions were "more stringent" than HIPAA's requirements. Id. at 708-09 ("HIPAA preempts [state law] and is controlling on the issue of ex parte communications").

By enacting HIPAA, the government announced a "clear" and "strong federal policy" favoring the protection of patients' private medical information. Id. at 711. HIPPA's "key component" is that it gives patients the right "to withhold permission and to effectively block" the distribution of medical information through informal channels. Id.

This Court has not issued a published opinion directly on point. However, it has accepted the arguments contained in this Memorandum and denied Motions for Protective Orders in a number of cases. See, e.g., Bagley v. Scott, 1:09-CV-00382; Muhammad v. Newman, 1:08-CV-01871; Valladares v. Howard Univ. Hosp., 1:08-CV-01169. Copies of the Orders denying Motions for Qualified Protective Orders in these cases are attached collectively hereto as **Exhibit 1**.

While not binding on this Court, the United States District Court for Maryland[1] has addressed this issue on a number of occasions and, in unpublished opinions, denied motions identical to the one in this case. See Jeffaries v. Kheiri, CV No. 07-

---

1   While not binding, authority from Maryland carries special weight in the District of Columbia. Courts here have held that "[i]n the absence of appellate or other authority in this jurisdiction," this court may give Maryland law special attention because the District

1923; Rebhan v. Barnett, CV No. 05-2119; Vongsavang v. Stinson, CV No. 06-0853; Washington v. Tramontona, CV No. 04-1144. Copies of the Orders denying Motions for Qualified Protective Orders in these cases are attached collectively hereto as **Exhibit 2**.

District Hospital Partners' reliance on Street v. Hedgepath, 607 A.2d 1238 (D.C. 1992) is misplaced. Street was decided before HIPAA was introduced, debated, or passed. While D.C. once allowed attorneys to have ex parte access to physicians if a plaintiff put his medical condition at issue, HIPAA expressly preempted these practices. See 42 U.S.C. § 1320d-7(a)(1) (providing that HIPAA preempted state law unless the state's law was more stringent).

### III. ARGUMENT

**A. District Hospital Partners has not demonstrated a need for ex parte access to Dwight Lodge's treating physicians sufficient to justify trampling on his privacy and physician-patient confidentiality rights and deviating from standard, formal discovery devices.**

HIPPA was enacted to protect the security and privacy of patient health information. See 42 U.S.C. § 1320(d)(2)(A). While it has mechanisms in place to allow litigants to access a party's medical records, it requires a litigant to demonstrate a need for the information and a showing of why formal discovery methods are insufficient.

In Washington v. Tramontona, CV No. 04-1144 (D. Md. 2005), attached

---

"was carved out of Maryland and derives its common law from that State." Walker v. Independence Fed. Sav. & Loan Ass'n, 555 A.2d 1019, 1022 (D.C.1989).

hereto as **Exhibit 2**, the United States District Court for Maryland denied a defendant's request to conduct ex parte interviews with a plaintiff's treating physicians because the defendants did not adequately establish a need for the relief sought. Noting that the passage of HIPAA evidenced a congressional intent to protect patient privacy rights and prevent the disclosure of potentially confidential information, the Court held that a defendant must do more than simply assert a desire to "level the playing field" and receive the "same ex parte access" that the plaintiff enjoys. Instead, a defendant must demonstrate a "need" for the interviews and explain why the Court should "deviat[e] from the discovery devices authorized by the rules of procedure." Absent this showing, the Court explained, the plaintiff's privacy and physician-patient confidentiality rights should be protected and the defendant's access should be limited to other, more formal discovery methods. In effect, the Court held that its role was not simply to rubber stamp every motion filed, but instead to critically evaluate the reasons for the be inadequate under the circumstances.

Following the reasoning in Tramontona, the United States District Court for Maryland has repeatedly held that simply uttering or writing phrases like "fundamental fairness" and "level playing field" is not enough. Instead, the Court explained that something more would be necessary to disregard the plaintiffs' privacy and physician-patient rights and deviate from the standard, formal discovery devices. See Jeffaries v. Kheiri, CV No. 07-1923; Rebhan v. Barnett, CV No. 05-2119; Vongsavang v. Stinson, CV No. 06-0853.

District Hospital Partners has plainly failed to meet the threshold requirement discussed in Tramontona, Jeffaries, Rebhan, and Vongsavang. In seven pages, District Hospital Partners only manages three conclusory sentences addressing its need for ex part access to Mr. Lodge's treating physicians. See Mem. of Pts. & Auth. at 6 (using the terms "prejudice" and "fairness" but not giving any reason why these terms apply or citing one fact or making one argument that would differentiate this case from any other). It does not even attempt to give, much less success in giving, any reason why depositions or other formal discovery methods would be too burdensome.

Without even reaching the more complex issue of whether ex parte access is appropriate in this case, the Court should deny District Hospital Partners' Motion out-of-hand for not making the threshold showing of need. If the strong public policy favoring the preservation of patient privacy and the physician-patient relationship found in HIPAA mean anything, it must mean that a defendant has to do more than simply assert that he wants access to a patient's treating physicians to justify a Court Order. If not, courts become nothing more than rubber stamps and the statutory protections found in HIPAA become meaningless.

    **B.    Allowing District Hospital Partners' attorneys to have informal, ex parte meetings and conversations with Dwight Lodge's treating physicians risks the inadvertent disclosure of protected, confidential information because of a lack of procedural safeguards; erosion of the relationships Mr. Lodge has with his treating physicians; and undue influence on the witnesses. Because of these risks, the Court should only allow DHP to access Mr. Lodge's physicians in depositions or other formal discovery methods.**

1. **The dangers of ex parte interviews are well documented.**

   a. **Allowing ex parte interviews risks the inadvertent disclosure of confidential medical information because there are no procedural safeguards to protect the patient's rights.**

Ex parte interviews between defense counsel and treating physicians risk the inadvertent, wrongful disclosure of confidential medical information. A number of courts, undoubtedly having seen countless arguments between the parties about the scope of discovery, privilege, and privacy rights, have expressed grave concerns about ex parte interviews. These courts recognize that without anyone there to protect the patient's rights, there are no real safeguards in such a setting.

A good discussion of this issue occurred in the Supreme Court of Iowa's decision in <u>Roosevelt Hotel Ltd. v. Sweeney</u>, 394 N.W.2d 353 (Iowa 1986). In that case, the Court stated that it was troubled by "the possibility of inadvertent wrongful disclosure of confidential matters" in ex parte interviews. It noted that judges and attorneys often have difficulties "determining whether a particular piece of information is relevant to the claim being litigated." <u>Id</u>. at 357. In an ex parte interview, unlike depositions or other discovery devices where adversarial parties can have disputes resolved by a neutral arbiter, there are no safeguards in place and the burden of protecting patients rights falls on either the defense attorney or the doctor. The Court reasoned that placing the burden on the defense attorney is "risky" because the attorney has an interest in developing information contrary to the interests of the patient. Even under the best of circumstances, the Court

explained, a defense attorney may not be able to avoid going into confidential matters because he or she does not know what questions will lead to the disclosure of protected, confidential information. See id.

The Court was even more dubious of placing this burden on the treating physician, stating that it "is a greater gamble and is unfair to the physician" because he or she will likely be unrepresented during judgments, much less the intricacies and nuances of the law. Id.

More recently, in Crenshaw v. Money Life Ins. Co., 318 F.Supp.2d 1015, 1029 (S.D. Cal. 2004), the federal District Court for the Southern District of California expressed doubts that a patient's rights would be adequately protected in an ex parte interview. In that case, the defendant sought permission to conduct ex parte interviews of the plaintiff's physicians to learn about his prior treatment for tinnitus, a constant roar/buzz of the ears. The Court denied the defendant's request, reasoning that the plaintiff had entered into a "confidential physician-patient relationship" with his treating physicians and would not have any method of ensuring that his confidences would be kept in an ex parte interview. See id. at 1025-26.

### b. Allowing ex parte meetings and conversations risks chilling and eroding the physician-patient relationship.

Patients and their treating physicians have a unique relationship and the private, confidential matters shared between them should not be disclosed easily. HIPAA was passed in recognition of this fact and evidences a legislative judgment

that the protection of the physician-patient relationship was important to the individuals and society. See 42 U.S.C. § 1320d-2(d)(2)(A) & (8)(ii).

The physician-patient relationship is more than an abstract, ivory tower idea; it is important to good health care.[2] As the United States District Court for the Eastern District of Louisiana explained, the ethical rules and attendant laws regarding the relationship between a physician and a patient serve both utilitarian and fairness purposes. Confidentiality reduces the stigma attached to seeking treatment for some infectious diseases and invites patients to provide information about previous ailments with greater candor. This effect allows physicians to provide more thorough preventative care. Moreover, because "[a]lmost every member of the public is aware of the promise of discretion contained in the Hippocratic Oath, every patient has a right to rely upon this warranty of silence." In re: Vioxx Products Liability Litigation, 230 F.R.D. 473, 477 (E.D. La. 2005) (citations omitted).

A number of courts have expressed concern that allowing ex parte meetings and interviews between defense attorneys and plaintiffs' treating physicians would

---

[2] The American Medical Association's ethics guidelines (which District Hospital Partners potentially violates) require doctors to advocate for the protection of confidential information even in the face of court orders:
E-S.OS Confidentiality
When the disclosure of confidential information is required by law or court order, physicians generally should notify the patient. Physicians should disclose the minimal information required by law, advocate for the protection of confidential information and, if appropriate, seek a change in the law. (III, IV, VII, VIII) Issued December 1983; Updated June 1994 and June 2007.

chill and erode the physician-patient relationship – both on individual and societal levels. Because the meetings and interviews occur without the patient's attorneys present, there is a substantial concern that patients will begin to see treating physicians as part of the legal process or, worse, a conspirator with the defense, and not persons in whom they can confide. See In re: Vioxx Products Liability Litigation, 230 F.R.D. at 477; Crist v. Moffatt, 389 S.E.2d 41,46 (N.C. 1990); Loudon v. Mhyre, 756 P.2d 138, 141 (Wash. 1988).

As one Court explained: "[t]he mere threat that a physician have a chilling effect on the physician-patient relationship and hinder further treatment." See Loudon, 756 P.2d at 141; see In re: Vioxx Products Liability Litigation, 230 F.R.D. at 477 ("Impairing the relationship between a physician and a patient would therefore not only be unfair to patients that have provided information to their physicians in confidence, but could reduce the quality of medical care provided").

        **c.    Allowing ex parte interviews risks unduly influencing the testimony of treating physicians who fear losing professional standing, being on the "wrong side" of the medical malpractice issue, and being at odds with their malpractice insurer.**

Ex parte meetings and interviews between defense attorneys and plaintiffs' treating physicians allow for undue influence, whether intentional or unintentional. Given the efforts by insurance companies, many treating physicians refuse to cooperate with plaintiffs' attorneys in scheduling depositions, much less conduct ex parte meetings in medical malpractice and personal injury cases. These physicians fear that testifying on behalf of a plaintiff will cause other doctors or their own

insurance companies to view them negatively, harm the medical profession in general, damage their referral sources, or increase their own malpractice insurance premiums.

This issue was discussed in detail in Crist v. Moffatt, 389 S.E.2d 41 (N.C. 1990). In that case, the Supreme Court of North Carolina expressed concern about the potential impact ex parte interviews would have on the treating physicians' testimony. The Court noted that ex parte interviews are worrisome given the relationships between defense counsel, insurance companies, and doctors in today's environment. It stated that it was not unthinkable that ex parte interviews between defense attorneys and treating physicians could disintegrate into a discussion of the impact of a jury's award upon a physician's professional reputation, the rising cost of malpractice insurance premiums, the notion that the treating physician might be the next person to be sued, and other topics which might influence the treating physician's views. Id. at 46. Even if interviews did not explicitly reference these topics, there is a substantial risk that they would influence the treating physicians' testimony or willingness to testify candidly.

> 2. **Limiting District Hospital Partners' access Dr. Lodge's treating physicians to depositions and other formal discover methods protects his privacy and physician-patient confidentiality rights, preserves the physician-patient relationship, and avoids unduly influencing the physicians' testimony while still giving it access to the information it seeks.**

Because of the inherent risks of ex parte interviews - inadvertent disclosures of confidential, protected information due to a lack of safeguards, harm to the

physician-patient relationship, and the potential for undue influence - a number of courts have held that defendants should only be allowed to speak to and question treating physicians in depositions or other formal discovery methods. See, e.g., In re: Vioxx Products Liability Litigation, 230 F.R.D. 473, 477 (E.D. La. 2005) (allowing plaintiffs to have ex parte access to their treating physicians but limiting defendants' access to depositions and other formal discovery methods); Crenshaw v. Mony Life Ins. Co., 318 F.Supp.2d 1015, 1025-26 (S.D. Cal. 2004) (same); Crist v. Moffatt, 389 S.E.2d 41, 47 (N.C. 1990) (same); Loudon v. Mhyre, 756 P.2d 138, 141-42 (Wash. 1988) (same); Roosevelt Hotel Ltd. v. Sweeney, 394 N.W.2d 353, 357 (Iowa 1986) (same).

Courts have also rejected the "fairness" arguments advanced by District Hospital Partners. In In re: Vioxx Products Liability Litigation, 230 F.R.D. at 477, for example, the District Court for the Eastern District of Louisiana held that while same access to a defendant "appears, at first glance, to be one sided and unfair . . . in actuality and as a practical matter, it is not . . . . The Defendants still are entitled to all of the medical records of the Plaintiffs [and] . . . can also continue to exercise their right to depose the Plaintiffs' treating physicians or confer with them in the presence of Plaintiffs' counsel." (citations omitted).

Even if the Court were to conclude that there is some, small merit to the fairness argument, it is simply not enough to justify trampling on Mr. Lodge's privacy rights. In Crist v. Moffatt, for example, the Supreme Court of North Carolina explained that the question presented in situations like these is how best to balance a medical malpractice plaintiff's

privacy and confidentiality interests against a defendant's interest in efficient and inexpensive discovery. While it agreed with the defendant that ex parte interviews are less expensive than formal discovery and make access to physicians more equal, the Court concluded that these issues were "insignificant" compared to the need to protect a plaintiff's interests. Id. at 46. The Court stated that considerations of patient privacy, the confidential relationship between doctor and patient, the adequacy of formal discovery devices, and the untenable position in which ex parte contacts place the nonparty treating physician supercede defendant's interest in a less expensive and more convenient method of discovery. Id. It reasoned that there were a sufficient number of discovery devices questions – that the defendant could develop its case without trampling on the plaintiff's privacy and physician-patient confidentiality rights. See id.

Similarly, in Loudon v. Mhyre, 756 P.2d at 141-42, the Supreme Court of Washington stated as follows:

> We are unconvinced that any hardship caused the defendants by having to use formal discovery procedures outweighs the potential risks involved with ex parte interviews. Defendants may still reach the plaintiff's relevant medical records, and the cost and scheduling problems attendant with oral depositions can be minimized (though perhaps not as satisfactorily) by using depositions upon written questions.

Employing a similar balancing test to the one used by the Crist Court, the Court held that "the burden placed on defendants by having to use formal discovery is outweighed by the problems inherent in ex parte contact." Id. at 140.

Based upon the arguments advanced in this Opposition, Dwight Lodge respectfully requests that the Court reject District Hospital Partners' Motion for Qualified Protective Order. The importance of protecting confidential medical

information exchanged between Mr. Lodge and his treating physicians and the inherent risks associated with allowing secretive, ex parte interviews are too great to grant the Motion. This is especially true given that District Hospital Partners can obtain the same information from depositions and other discovery methods without trampling on Mr. Lodge's rights.

If the Court is inclined to grant the Motion, Mr. Lodge requests that the Court require District Hospital Partners to (1) give him 15 days notice of any meeting and/or interview between its attorneys and his treating physicians and (2) allow his attorney to be present for the entirety of the meeting and/or conversation.

## IV. CONCLUSION

WHEREFORE and for the foregoing reasons, Plaintiff, Dwight Lodge, respectfully requests that the Court DENY the Motion for Qualified Protective Order filed by Defendant, District Hospital Partners.

Respectfully submitted,

By: /s/ Stuart M. Salsbury
Stuart M. Salsbury
Gregory G. Hopper
Salsbury, Clements, Bekman, Marder & Adkins
300 West Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633

Counsel for the Plaintiff