# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DWIGHT LODGE<br><br>　　　Plaintiff<br><br>　　v.<br><br>DISTRICT HOSPITAL PARTNERS, et al.<br><br>　　　Defendants | Civil Case No. 1:09 cv 02110 (EGS) |

## OPPOSITION TO MOTION TO COMPEL

Plaintiff, Dwight Lodge, by and through his attorneys, Stuart M. Salsbury, Gregory G. Hopper, and Salsbury, Clements, Bekman, Marder & Adkins, LLC, respectfully requests that the Court DENY the Motion to Compel filed by Defendants, District Hospital Partners LP and Mariama Nixon, RN, and, in support thereof, states as follows:

1.　Dwight Lodge suffered a traumatic brain injury on January 2, 2007 while hospitalized at George Washington Hospital. Mr. Lodge, who was still sedated from a bronchoscopy procedure earlier that day, was left unattended in a room with an unsecured oxygen cylinder. Sedated, drowsy, and incoherent, he woke-up with an urgent need to use the bathroom. As he made his way across the room, he began to feel weak, reached out for the cylinder, and fell to the ground with the cylinder landing on his head. The blow to Mr. Lodge's head caused him to suffer

1

classic post-concussion and traumatic brain injury problems: memory loss, confusion, and impaired mental functioning. The blow also caused him to periodically have diaphragmatic paralysis, preventing him from being able to breath.

2. Mr. Lodge's ongoing medical problems have made discovery very difficult. Between October of 2009 and July of 2010, for example, Mr. Lodge was hospitalized eight times for breathing attacks and suffered from other attacks that did not require hospitalization. See Admission Reports for Hospitalizations, collectively attached hereto as **Exhibit 1**. During this time, and in the subsequent weeks while he was recuperating, it was nearly impossible for Mr. Lodge to communicate with his counsel or for his counsel to get definitive answers from his treating physicians. In fact, because of the complexity and seriousness of Mr. Lodge's condition, and the unpredictable nature of the attacks, his primary treating doctor, Dr. Cherry Wongrakool, was fearful that his participation in discovery could trigger an attack. See Letter from Dr. Cherry Wongrakool, attached hereto as **Exhibit 2**. Dr. Wongrakool made it very clear that Mr. Lodge could not travel outside of the Atlanta area, preventing him from being seen by any outside experts and causing the parties to go through a back and forth process that slowed down the scheduling of his deposition. See id.

3. Defense counsel have been kept in the loop about Mr. Lodge's medical condition. The initial designation, which was sent to defense counsel on July 16, 2010, explained that Mr. Lodge had been hospitalized and this made it impossible for him to be deposed, provide answers to discovery, or be evaluated by outside

experts. See Plaintiff's Initial Designation, dated July 16, 2010, attached hereto as **Exhibit 3**. Three days later, Mr. Lodge's counsel sent an email suggesting a change in the Scheduling Order because of the "recent medical emergency." See Email to Defense Counsel, dated July 19, 2010, attached hereto as **Exhibit 4**.

4. In recognition of the discovery problems, the parties filed a Consent Motion to Modify Scheduling Order on July 19, 2010. In that Motion, the parties jointly informed the Court that "[t]he progress of discovery . . . has been slowed by a number of factors" including Mr. Lodge having "been repeatedly hospitalized" and this causing a "ripple effect, making Kevin Smith, Dwight Lodge's partner, unavailable for deposition and delaying the depositions of other parties and witnesses." See Consent Mot. to Modify Sched. Order attached hereto as **Exhibit 5**, at ¶ 2. The parties also noted that the delay prevented Mr. Lodge from being able to give his experts the information necessary for them to "issue substantive reports." Id. at ¶ 4.

5. The parties made some progress after the first Consent Motion was filed. Kevin Smith was deposed; Mr. Lodge was able to communicate enough with his counsel to finalize, sign, and produce discovery responses; and Defendant Mariama Nixon was deposed.

6. Despite this progress, other difficulties arose. The defense sought a broad range of medical and other records from Mr. Lodge's prior treating physicians. While this is not uncommon, Mr. Lodge prior career as the CEO of a number of start-up technology and software companies meant he had lived all

across the country and his memory problems compounded the difficulty in identifying his prior physicians.

7. In recognition of these difficulties, and because the parties' hope of smoother sailing was not borne out, the parties filed a second Consent Motion to Modify Scheduling Order on October 8, 2010. See Consent Mot. to Mod. Sched. Order, attached hereto as **Exhibit 6**. The parties agreed that the sensitive nature of Mr. Lodge's pre-existing immune deficiency, his memory issues, and the fact that he had lived, been employed, and potentially been treated by physicians across the country made discovery more difficult and time consuming. See id. at ¶ 2-3. The parties sought an extension of the Schedule to address these issues.

8. In the month since the second Consent Motion was filed and granted, Plaintiff has made substantial strides forward in discovery. He and his sister, Deborah Newman, were deposed in Atlanta. Plaintiff has also either scheduled or provided deposition dates for Jerry Palmer, a fact witness who was at the Hospital when Mr. Lodge fell; Nurses Elizabeth Arruda and Maria Cvach, Mr. Lodge's nursing liability experts; Dr. Douglas Ward, a treating physician who has also been identified as an expert witness; and Mona Yudkoff, a life care planner.

9. The only deposition dates that Mr. Lodge owes the defense are for Dr. Annie Cooper, his treating psychiatrist in Atlanta; Dr. Michael Johns, his treating otolaryngologist in Atlanta; Dr. Roger MacArthur, a retained infectious disease expert; Dr. Emmanuel Olarinde, a neuropsychologist who saw him after the fall; and Dr. Cherry Wongrakool, his treating pulmonologist and critical care doctor in

4

Atlanta.

10. The inability to provide deposition dates for these doctors is not due to a lack of effort or diligence on Plaintiff's part. Drs. Johns, Olarinde, and Wongrakool have all cooperated with Mr. Lodge's counsel. However, they have indicated that they are having difficulty finding a time to schedule their depositions. Mr. Lodge's counsel has no reason to believe that their depositions will not be scheduled shortly. Additionally, Dr. Cooper has been out of the office when recent voicemails were left, but Mr. Lodge's counsel has no reason to believe that she will not provide dates upon her return.

11. The defense is not being prejudiced by the difficulties in obtaining deposition dates. In addition to the five depositions currently scheduled, Mr. Lodge has asked the defense for the depositions of five nurses involved in his care and a corporate designee. While the nurses were requested recently, Mr. Lodge requested the designee deposition in April. See Email to Defense Counsel dated April 30, 2010, attached hereto as **Exhibit 7**. In short, the parties will have plenty to prepare for in the next few weeks while Drs. Cooper, Johns, Olarinde, and Wongrakool resolve their scheduling problems.

12. The arguments raised about expert disclosures in the Motion to Compel are largely moot. The defense has expert disclosures for Nurses Arruda and Cvach (designated in July and August and their expert reports were produced in August); Dr. Michael Johns, Mr. Lodge's treating otolaryngologist (designated in August, his medical records were produced in August, and, after an objection was

raised in the Motion to Dismiss, a more detailed expert disclosure was made today); Dr. Olarinde (designated in July and August and his expert report was produced in August); Dr. Ward (designated in August, his medical records were produced in August, and, after an objection was raised in the Motion to Compel, a more detailed expert disclosure was made today); and Dr. Wongrakool (designated in July and August, her medical records were produced in August, and, after an objection was raised in the Motion to Compel, a more detailed expert disclosure was made today).

13. Mr. Lodge owes the defense more detailed disclosures for Drs. Cooper and MacArthur and Mona Yudkoff, the life care planner. Mr. Lodge anticipates being able to produce more detailed expert disclosures for all three experts in the next two weeks. Ms. Yudkoff was waiting for Drs. Johns and Wongrakool's disclosures, which have now been provided. Additionally, Mr. Lodge has calls into Drs. Cooper and MacArthur to obtain their finalized opinions.

14. At the end of the day, the discovery issues in this case have been well known and, until the filing of the Motion to Compel, been dealt with cooperatively. Mr. Lodge has made great strides in the last two months and almost all of the issues raised have been resolved. Of the remaining issues, Mr. Lodge expects to resolve them in the next three weeks.

WHEREFORE and for the foregoing reasons, Plaintiff, Dwight Lodge, respectfully requests that the Court DENY the Motion to Compel or, in the alternative, Order that he have three weeks from the date of the Order to provide a more detailed expert disclosure for Dr. Annie Cooper, Dr. Roger MacArthur, and

Mona Yudkoff and deposition dates for Dr. Cooper, Dr. Michael Johns, Dr. MacArthur, Dr. Olarinde, and Dr. Wongrakool.

Respectfully submitted,

By: /s/ Stuart M. Salsbury
Stuart M. Salsbury
Gregory G. Hopper
Salsbury, Clements, Bekman, Marder & Adkins
300 West Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633

Counsel for the Plaintiff